587 A.2d 354

LABORERS COMBINED FUNDS OF WESTERN PENNSYL-VANIA, as agent for Peter J. Livolsi; and Albert W. Betler, Trustees ad litem, Laborers District Counsel of Western Pennsylvania Welfare and Pension Funds, The Construction Industry Advancement Program of Western Pennsylvania Fund, and the Laborers District Counsel of Western Pennsylvania and its affiliated local unions

v.

Amidio MATTEI, Joseph Mattei and Domenic J. Mattei.

Appeal of Amidio J. MATTEI and Domenic J. Mattei.

Superior Court of Pennsylvania.

Argued Oct. 16, 1990.

Decided Feb. 26, 1991.

Paris A. Diamond, Mars, for appellants.

Gary P. Hunt, Pittsburgh, for appellees.

Before ROWLEY, WIEAND and HUDOCK, JJ.

WIEAND, Judge:

As a result of a non-jury trial held in October, 1985, Laborers Combined Funds of Western Pennsylvania, trustees of a health, welfare and pension fund for construction laborers (the Fund), recovered a judgment against Amidio Mattei and Domenic J. Mattei, officers and directors of Mattei Brothers, Inc., for failing to make contributions to the Fund in the amount of $44,241.65. The judgment was affirmed by the Superior Court in December, 1986. See: *Laborers Combined Funds of Western Pennsylvania v. Mattei*, 359 Pa.Super. 399, 518 A.2d 1296 (1986). In September, 1989, the trustees issued execution on the judgment. Thereafter, the Matteis filed a petition to open or strike the judgment. The trial court dismissed the petition, and the Matteis appealed.

The basis for the petition to strike the judgment was appellants' contention that the provisions of the Wage Payment and Collection Law, 43 Pa.S. § 260.1 et seq., which imposed personal liability upon officers and directors for contribution, had been preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Such preemption had been found in 1986 by the Third Circuit in *McMahon v. McDowell*, 794 F.2d 100 (3rd Cir. 1986), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). The preemption issue, however, had not been asserted as a defense in the prior action and was not preserved for review on appeal. Indeed, the Third Circuit had previously held that there had been no preemption. See: *Carpenters Health & Welfare Fund v. Kenneth R.*

*Ambrose, Inc.,* 727 F.2d 279 (3d Cir.1983). The issue before this Court, therefore, is to determine whether *McMahon v. McDowell, supra,* is to be applied retroactively to vitiate the judgment previously entered and now being enforced by appellees.

Counsel have not called to our attention and our own research has failed to disclose any decision dealing with the retroactivity of *McMahon v. McDowell, supra.* However, there are decisions in other preemption cases which have refused to apply preemption holdings retroactively to cases adjudicated finally in state courts. These decisions have been carefully reviewed and analyzed in the opinion of the learned trial judge; and, therefore, we quote from his opinion as follows:

"In [*McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)], the Supreme Court held that California's community property law permitting the distribution upon divorce of military pensions was preempted by federal military pay provisions. Following this decision, numerous attempts were made to overturn property distribution decisions rendered pre-*McCarty,* on the basis that the courts rendering those decisions had lacked subject matter jurisdiction over the military pension. The courts *uniformly* rejected such challenges, holding that *McCarty* should not be applied retroactively so as to overturn settled judgments. (footnote omitted).

"Probably the leading case involving the nonretroactivity of *McCarty* was *Sheldon v. Sheldon,* 124 Cal.App.3d 371, 177 Cal.Rptr. 380 (1981), *appeal dismissed for want of a substantial federal question,* 464 [456] U.S. 941[, 102 S.Ct. 2002, 72 L.Ed.2d 462] (1982). In *White v. White,* 731 F.2d 1440, 1443 (9th Cir.1984), the Court held that the Supreme Court's dismissal for want of a substantial federal question was a decision on the merits of the issues presented in the statement of jurisdiction. One of the questions presented in *Sheldon* was:

Does federal preemption of state community property laws regarding division of military retirement pay render

state judgments void for lack of subject matter jurisdiction where such judgments were entered after Congress had preempted area of law?

"Other cases holding *McCarty* non-retroactive include *Armstrong v. Armstrong*, 696 F.2d 1237 (9th Cir.), *cert. denied*[,] 464 U.S. 933[, 104 S.Ct. 337, 78 L.Ed.2d 306] (1983); *Erspan v. Badgett*, 659 F.2d 26 (5th Cir.1981); *Segrest v. Segrest*, 649 S.W.2d 610 (Tex.), *cert. denied*[,] 464 U.S. 894, 104 S.Ct. 242[, 78 L.Ed.2d 232] (1983); *Camp v. Camp*, 142 Cal.App.3d 217, 191 Cal.Rptr. 45 (1983); *F[e]llers v. F[e]llers*, 125 Cal.App.3d 254, 178 Cal.Rptr. 35 (1981); *Marriage of Vinson*, 57 Or.App. 355, 644 P.2d 635 (1982); *Rodrigues v. Rodrigues*, 133 Ariz. 88, 649 P.2d 291 (1982); *Whenry v. Whenry*, 98 N.M. 737, 652 P.2d 1188 (1982); and *Duke v. Duke*, 98 Nev. 148, 643 P.2d 1205 (1982).

■ "Most of the cases analyzed the retroactivity issue in terms of the criteria laid down by the Supreme Court in numerous cases including *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858[, 73 L.Ed.2d 598] (1982). The Court there discussed a tripartite standard for determining whether a judicial decision should be accorded retroactive effect:

1) Was it clearly foreshadowed, or did it overrule precedent?

2) Would retroactive application further or retard the effect of the decision?

3) Would retroactivity bring about substantial inequitable results, including harm to the judicial system?

■ "The cases refusing to apply *McCarty* retroactively found that it had not been foreshadowed, despite the fact that in *Hisquierdo v. Hisquierdo*, 439 U.S. 572[, 99 S.Ct. 802, 59 L.Ed.2d 1] (1979), the Court had previously held that railroad retirement pensions were preempted from state court consideration. The instant case is even a much stronger case against retroactivity, for only three years prior to *McMahon*, the Third Circuit had specifically held

that ERISA did not preempt the [Wage Payment and Collection Law]. *Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc., [supra].*

"The second factor of *Northern Pipeline* also points toward non-retroactivity of *McMahon.* As set forth in *McMahon,* the purpose of this preemption provision in ERISA is to provide a uniform procedure for assuring the funding of employee benefit plans. While the instant type of suit could conceivably frustrate that procedure in the future, the overturning of judgments years later when no other procedure could then be followed not only would not further the plan of ERISA, but would hinder it further.

"Finally, many of the above-cited cases point to the third factor of *Northern Pipeline:* 'Would retroactivity bring about inequitable results?' In *Sheldon v. Sheldon, supra,* after noting the emotional and financial turmoil caused by a divorce proceeding, the Court stated:

'To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones.' 177 Cal.Rptr. at 384, 124 Cal.App.3d at 380.

"Certainly a similar situation exists in the labor arena. Where an often fragile peace exists between labor and management, it would be foolhardy to vacate judgments long thought inviolate and thus risk strife where calm previously existed. Particularly is this so where Plaintiffs and others similarly situated relied upon the statutory scheme outlined in the [Wage Payment and Collection Law] in efforts to collect the fringe benefit contributions then due. At this late date, statutes of limitation or other procedural bars such as intervening bankruptcies or dissolutions could impair workers' ability to collect sums rightfully due them.

"Moreover, according retroactive effect to *McMahon* could also cause an 'immense burden on the administration of justice in our civil courts were such relitigation permitted'. *Sheldon, ibid.* Not only would each judgment debtor

seek to reopen the judgment, but executions upon such judgments would be in jeopardy as well. And the employee creditors would of course be bringing other actions to try to enforce their rights through different remedies to replace the remedy newly abrogated."

The issue of preemption was not raised in defense of appellees' substantive claim. *McMahon* was decided by the Third Circuit between the time of trial and argument of the appeal before the Superior Court. The issue of preemption was not argued on appeal, and the judgment entered in the trial court was thereafter affirmed. Appellants did nothing more for almost three years and were nudged into action only when appellees executed upon their judgment. Under these circumstances, appellants' rights to assert a preemption defense must be deemed to have been lost by their own inaction and the passage of time. The trial court properly refused to strike the judgment.

Order affirmed.